Ms. Hull. Thank you, Your Honor. May it please the Court. Rule 37 serves vital purposes of fundamental fairness and efficiency in deterring trial by ambush, but it is a dead letter if it doesn't require the exclusion of the When did you first have notice of what Dr. Porter was going to say? The first time that we had notice was when he was on the stand at trial in terms of the testimony here that in terms of the causation. I've read the transcript of the trial that has anything to do with this part and the opening statements and all the rest of it and I was looking for something that indicated definitively when the defense was put on notice of what was about to happen. And the first time that the defense was on notice with respect to the testimony that the witness himself admitted on the stand was a change in his testimony was live testimony during trial. That was the first time and I don't think there's any dispute that it was at trial on the witness stand that the witness gave the undisclosed testimony at issue here. And what was his explanation uncrossed or direct for explaining why he changed his mind? There has never been an explanation for not notifying mentor of the change. The explanation on this stand that was given was that in response to questions from plaintiff's counsel about his testimony, preparing for testimony once the case was set for trial, that he went back and looked at his testimony in response to questioning from Ms. Taylor's lawyers. So that was his explanation for the change. But there's never been any explanation. What exactly was the change? I thought I had understood from the record that what happened was that he had expressed in deposition and even earlier in his direct some lack of knowledge about whether the product degraded. And then the plaintiff's lawyer asked him to assume degradation. And he then went on to express an opinion based on that assumption. Is that what happened? Not precisely, Your Honor. And let me, if I may, cite and quote from what Dr. Porter said at his testimony. He was specifically asked at his deposition. Thank you, Your Honor. At his deposition, he was specifically asked, what are you claiming the defendant's product caused in this case? And this is what he said, and I quote, the only thing currently that we could somewhat relate to her obtate would be maybe some of the tenderness on examination along the mesh. That's in Appendix Volume 1 at Tab 155-2 at 366. He further admitted there was no evidence of an erosion. That's Document 115 at 3, Note 1. And he directly declined to opine that the obtate caused her bladder inflammation to a reasonable degree of medical certainty. And, again, that's at Doc 155-2 at 361. And all of that changed in the middle of trial with no warning to mentor. Based on the question that asked him to assume degradation. Isn't that true? That was one aspect, but he also opined. He did assume it. He had been, quite frankly, skeptical of degradation in his deposition testimony. He had been very skeptical of degradation. And so mentor had no warning that he would assume it for purposes. But I think, more importantly, Your Honor, there was a complete about-face with respect to the bladder inflammation that he, in his deposition testimony, setting aside assuming for purposes of responding to questions degradation. He affirmatively refused to opine that obtate caused her bladder inflammation. And that was a direct switch. And I think significantly, I don't think that the other side, and certainly not the trial judge in this case, I don't think there was any dispute that there was a change. There was no dispute. But that's why the trial judge was upset. The trial judge didn't know he was going to grant a mistrial, so he took the alternative and said you have the evening. It was between one day, actually. It was Wednesday to Thursday or Thursday to Friday. And what does the doctor's explanation understand for why he changed his mind between the deposition and the trial? I know that they didn't give you any notice, and I gather no good explanation for why counsel hadn't notified you. No explanation whatsoever for why we weren't notified. Again, the only explanation on the stand, he was asked by plaintiff's counsel, well, your testimony has evolved and changed, hasn't it? And the doctor said yes and explained that in response to questions from plaintiff's counsel about the testimony during trial preparation. I mean, did he have something other than he's just in a different mood that day, just felt differently? Was there something a little more scientific as to why he changed his mind? No, Your Honor, I have not. Didn't he, in effect, say he basically rethought the case? He said once it was set for trial. In his report, he lists all of the information he used to reach his opinion, which included Dr. Vukovich's testimony, all of that. So I'm operating on an assumption that when he said he went back over, he's talking about the same stuff that he considered when he made his report and then later did his deposition. Am I giving him too much? Honestly, Your Honor, I can't speak to that. You may well be. The only statement at trial, the only explanation we've ever seen, and there's certainly not anything further in the briefing on appeal, went to once the case got set for trial, he met with Ms. Taylor's lawyers, and in response to questions from them, we thought presumably not just his report but his deposition, and I think it's his testimony at the deposition that is the real 180 turnaround here. Well, I assume so. So in his deposition, you're feeling pretty good. He can't say that the mesh caused cystitis, which is the term for the bladder problem. So you all are feeling good in trial prep. I assume you don't have to worry about that, or did you come back with your own expert to say? What did you think you were in peril of? What was the problem? If it's not going to be cystitis, what did you think was left at trial that was going to be the problem caused by the mesh? Judge Carnes, we agree, based on particularly the testimony I read, that the only thing, and I think it's important to note that— Just answer the question. What did you think was left? You didn't think cystitis was a problem. We thought she had a very weak case on specific causation. What did you think? There was going to be something she was talking about to a jury that the mesh had caused. If it was not cystitis, what problem did you think that was going to be litigated at trial? According to Dr. Porter, and again, he was her only specific causation testimony. There was certainly general causation testimony in the case. But in terms of the specific causation testimony, we refused an offer of settlement. Is that all that was on the table then? Cystitis was all that she had as a possible malady? Well, there was erosion. She had a claim of erosion, which her physician, her treating physician— And erosion caused her what symptoms? Pain and discomfort. But her treating physician, said Abte, was not the cause. A treating physician testimony. And Dr. Porter was her only specific causation expert. And of course, specific causation had to be proved by expert testimony. So you're absolutely right. We went into trial thinking she had a very weak case with respect to specific causation. And so had you known cystitis was going to be something that was going to be the argument, a bladder problem, you might have gotten your own expert to come back and discount that, but you weren't alerted that that was going to be a problem. Absolutely. I think going back as far as the decision to reject the plaintiff's offer of settlement, for which we're now on the hook for nearly half a million dollars in attorney's fees. I think it goes all the way back to before trial. And certainly you're right in terms of rebuttal witnesses. Perhaps how we would have— Did you— Yes, Your Honor. I'm sorry. I didn't mean to interrupt. But did you argue to the trial judge that you were prejudiced in that you were misled and therefore didn't have your own expert on this? We certainly argued in our—we made two motions. We made a motion within several days before— But this is a yes or no question. Did you argue in support of however many motions you made that the prejudice to you, perhaps among others, was that you were misled and therefore didn't have an expert to counter Porter's allegedly new version? I think our argument, Your Honor, was because plaintiff bore the burden of proof. I think our argument was that we simply were ambushed, and our whole trial strategy in terms of basing it on this notion of a weak case of causation, in terms of the expert— I take it that's a no? No, Your Honor. I think in terms of our own rebuttal experts, certainly we argued that that impaired our case. You couldn't have known anything until you heard it. That's a problem. That's correct. And you moved to strike after you heard them, as well as before. Yes, we did. We moved several times. Several times. And did you on any of those occasions say, Judge, this continuance, this doesn't even begin to cut it in terms of protecting our rights because in reliance on the opinion that was never supplemented, we didn't go out and get an expert to counter this new testimony? Were those words in substance or in haec verba ever uttered by your side? Words to those effect in terms of that the error was not substantially justified or harmless in our motion that was made several times after trial, and certainly in our post-trial motion, that in our view not even a full day continuance was in effect. I'm still not hearing an answer to my question. Yes, Your Honor. We certainly did claim that there was harm to us but denied stability for rebuttal witnesses. I know that. The question is very simple. Did you say to the trial judge, we were prejudiced at least in part in that we were misled and therefore did not have an expert to counter this testimony? You didn't say that. Did you say that? No. Not in terms of an expert to counter. Counsel, those words aren't in the record. No, Your Honor. I do believe in our post-trial motion. Your argument was that the rules had been violated and so forth. Yes. We understand your point. Our argument was that the rule was violated. It was a drastic change in the opinion testimony and you weren't put on notice. You've saved some rebuttal time. Thank you, Your Honor. Mr. Lennon, you didn't try this case. I did not try this case, Your Honor. No. Where do I find in the record the first indication that you knew or that the other side knew what the doctor was going to say? Well, I think that the defense spends— Can you answer that question of where I find it in the record? Sure. I think that Dr. Porter's pretrial report, which is document 155-1, that's the expert's report that he submitted in this case, it, as you said, Judge Shoflat, it goes through Dr. Vukovic's clinical notes in 20-some, 30 paragraphs, and several of them— It goes through all of the sources. It does. Yes. All I'm saying is let's assume for sake of discussion that his trial testimony was a departure from his deposition testimony. Okay. Material. Okay. Okay. What does the record show as to when the defense was put on notice that that would be the testimony? Well, I don't—if we're assuming that there was a material— I just make it just for myself. I don't think that—I agree. It's not in the record. I agree. I think that there may have been some discussion. All right. At night, I don't know. It's not in the record. Okay. At some point in time, Mr. Blizzard put him on, did he not? That's correct. Okay. At some point in time, Mr. Blizzard knew what he was going to say. I assume so. Okay. Well, this is a $10,000-a-day witness, is it? That's correct. Okay. So Mr. Blizzard wasn't going to bring a $10,000-a-day witness into Columbus unless he knew what he was going to say. I'll grant you that, Your Honor. Sure. Okay. So I'm drawing an inference. It's not in the record. I just draw an inference from that that at some point in time, he told Mr. Blizzard exactly what he was going to testify to. Okay. When I read the deposition, I said to myself—I've been around a little while— I would never put this guy on the witness stand. I would settle this case. Because the only testimony that he possibly gave in his deposition that had any probative value and was very slim was after there was a break in the deposition. Correct. And then he went out and talked to counsel. And when he came back in and testified, one page, Mr. Till examined him. He had somewhat of an opinion, but not the one that he had at trial. So I assume that there was a time when he told Blizzard what he was going to say. But we don't know that, do we? I certainly don't, no. The record doesn't know that. The record doesn't say that either. Just the inference that he wouldn't have brought that expensive witness in without knowing. I think that we can make an inference that he had some idea of what the doctor was going to testify to. Let me tell you what my problem is, and you can address it. Please. Okay. If the requirement of producing expert testimony via report and then deposition, et cetera, the idea is that the adversary is going to understand to know what's going to happen at trial. And if there's a material deviation without any notice or anything else, then all that's left for the proponent of the testimony is there's no prejudice. Well, if that's the case, it writes the rule off the books. Because the judge, in the middle of the trial, nine-day trial, with a witness costing $10,000 a day and Blizzard's trying to get him off the stand, isn't going to declare a mistrial. So that's what he was left with is prejudice. So what I'm weighing is the policy underpinnings of the requirement that candor be displayed in terms of producing the witness testimony, first with a report and then later on deposition, and whether or not this so-called prejudice can be relieved at trial. Of course, there was a massive cross-examination of him. It was. The judge did compliment the lawyer. Of course, it said, I don't see any prejudice at the end of the day. But the testimony went to the jury. If it had been stricken, it doesn't go to the jury. And he's a critical witness. So if these policy—I'm wrestling with this policy about do we forgive? This is the most egregious I've seen in 50 years on the bench, to be frank with you. Well, so I think my answer to your question, where I think you're going, Judge Shoflat, is what would Mentor have done in this case had they had some notice that the testimony was going to be as it was? And I think the answer to that is exactly what they did. No, no. They would have been—first of all, he would have been redeposed. Maybe so. Oh, come on. They could have asked the district court. In one of the cases that Mentor cites in its brief, I believe it's the Eighth Circuit case, the opponent in that case said, Your Honor, can we have the lunch hour to redepose this witness and figure out what he's going to say? The district judge said no. That was an abuse of discretion. Here, Mentor's trial counsel said, can we at least have overnight— Well, that's all they had left. The judge wasn't going to declare a mistrial. I'm sorry? The judge wasn't going to declare a mistrial. Oh, he wasn't going to strike his testimony. The other point that I was going to make, Judge Shoflat, and what differentiates this case from the cases that Mentor relies on on this point is that in, again, the same Eighth Circuit case and the First Circuit case, the courts of appeals there found that the party in Mentor's shoes had no opportunity to present rebuttal evidence because they had no idea that this sort of evidence was going to be in a trial. And that's just not the case here. Mentor had a days-long presentation of its evidence, experts that said degradation is bogus. Well, wait a minute. In your opening statement, in Blizzard's opening statement— I read the opening statement, and I said to myself, maybe he telegraphed in the opening statement what Dr. Porter was going to say. Porter wasn't even mentioned in the opening statement. His name is not there. I don't have the opening right in front of me. Well, if it's there, you can write me a letter. No, no, no, I don't think that Dr. Porter's name is in there, but I think the substance of the case was set out in opening statement, as it almost always is. I'm not sure that the mention of Dr. Porter is such a great trial technique for a trial lawyer to start talking— His testimony wasn't encapsulated in the opening statement without attributing it to him. I think that the substance of Dr. Porter's testimony was encapsulated in the opening statement. He described what the plaintiff was going to show, the injuries that they were going to show, the defects that they were going to show, the failures to warn, et cetera. Indicated that there would be evidence to show that bladder problems, cystitis, was caused by this. That was in the opening statement. Are you asking me that or telling me? Yes, I'm asking you. I don't want to represent that to you, Judge Carnes, without having it right in front of me. I don't know the answer to that question. Counsel, don't we ultimately have to fall back on the scope of review here? You have an experienced trial judge conducting a trial. Assume for the sake of argument that there was a violation and a failure to more timely apprise of the change. But what the defense asked for is overnight they got it. They don't say anything about their being prejudiced by the failure to have an opportunity to call their own expert on the same subject. Well, if I might. Excuse me. They don't ask to depose him overnight or for a continuance of a day to conduct a new deposition. Something, as a trial judge, I've granted more than once. Isn't it simply a question of whether the trial judge abused his discretion? It is indeed, and I think you're absolutely right. And the reason they didn't ask for let us get a week to develop all kinds of other evidence that we might use to rebut Dr. Porter is because they already have that evidence. It's the evidence in their case. It's the evidence that degradation is bogus science, so to speak. It's evidence that Ms. Taylor actually didn't suffer any injuries. It's evidence that the warnings were sufficient. It's evidence that the regulatory process was proper. They had evidence, because to me the one tangible thing that this expert, forget the degradation, the assumption, is the bladder problem, that he 180 degrees didn't cause the cystitis, did cause the cystitis. Did they have evidence to rebut that in their case? So first let me sort of answer maybe a subsidiary question there, which they talk about his deposition at length, and that he testified, Dr. Porter, only as to certain injuries and not others. But the rule, Rule 26, is not about depositions. It's about reports, expert reports. And at page 8 and 9 of Dr. Porter's expert report that was submitted well before trial, he concludes that within a reasonable degree of medical certainty, the most likely cause of her chronic inflammation is the ObTape. Is the what? ObTape, the product. That is his final conclusion in his expert report. Now to the extent that their complaint is about degradation, that is something that's not in his expert report. I freely admit that. And it's something that he testified at his deposition, he said, oh, I don't know, maybe, maybe not. So you could have a report where an expert vaguely says something like, bladder problems caused by the product. Then you depose the expert, and the expert says, don't know why that was in the report, not a problem at all. And then you go to trial, and then you're safe to pull the rug out from under the defendants just because something in the report vaguely referred to that? I would respectfully challenge the characterization, excuse me, that it's a vague reference to it. I am not saying that this is ideal trial practice. I certainly am not. But what I am saying is – But Mr. Blizzard will keep going with this practice if we – I'm not sure he will, because I think that an opinion that this court could write in this case, affirming the judgment of the district court on this issue, would speak to the fact that, really, there was no prejudice here because Mentor had the opportunity and, in fact, the evidence that it put in at trial that rebutted all of this testimony. Counsel, you have a lawyer telling the judge, I've got a witness that's costing me $10,000 a day.  Well, but they did – No, wait a minute. The judge sees the clear violation of the policy, the rule. I don't think he – I agree with what Judge Karn says. I read his report, and it's conclusory. He cites all the things, and it concludes it. So you take the deposition and tie him down. There was no time to take his deposition away from a substantial, convenient continuance and then grill him as to when and under what circumstances did he change his mind and when did he tell Blizzard, and what were the conversations? Because, in my view, the attorney-client privilege on this issue may evaporate. I hear your point, and I take your honest point. So the court is sitting there, and Blizzard's saying it's $10,000 a day, so the judge said, well, we'll let him have overnight. Well, in response to Mr. Blizzard's – Well, of course he could – Overnight he had this deposition. I've marked 14 places in the deposition where he gave negative answers, that he couldn't say this and he couldn't say that. I take your point about the $10,000. I think that that's undermined somewhat by the – What do we say in an opinion that keeps this from happening again? I'm sorry? What do we say in an opinion that tells district judges you need to screen these things in advance of trial? You get in the middle of the trial, and then the momentum is such that you say, well, give him overnight to take a deposition. I think an opinion that emphasizes the specific facts of this case as it relates to what evidence Mentor would have submitted if the testimony had not changed. And the fact, I think, of the matter in this case is that the evidence would have been the same. If he could have had a deposition, he might have been able to destroy the witness. So it seems to me, Judge Stolflat, that you might be saying that the abuse of discretion is granting an overnight continuance rather than – No, no, I think the abuse of discretion is the violation of the rule, first of all. And so they're weighing the violation of the rule against what? Well, I think just as Judge Kaplan said – If you say there's no prejudice, which is a discretionary call in a way, it's a mixed-law fact question. It is, and in this case – So therefore, so go ahead and just violate the rule. Well, I – Ad nauseum. I don't think that the mind run of a case like this is going to be one in which the opponent of the party offering this evidence is able to offer such substantial rebuttal and undermining testimony like Mentor did. And if you go read the cases cited by Mentor, Licardi, the Tenbarge case, those are their two main cases. The real problem there was that – But you see, the problem is it gets to the jury. His testimony gets to the jury. There's a withering cross-examination. It still gets to the jury. And, of course, then you had Vukovich, who was an employee of Mentor, which played off, but it still gets to the jury. If it's stricken because of the violation of the rule, it never gets to the jury, and you don't have that causation testimony. Well, I also respectfully don't believe, Your Honor, that the rule should be that it's always stricken. I didn't say always stricken. Well, so getting to the jury is not necessarily the problem. This is a case in which Blizzard knew long in advance what was going to happen and didn't put the other side on notice. I say that's deliberate. I don't know that, Your Honor. Well, I know you don't. Well, we know that there's nothing on the record, and we know it was 10,000 a day, and we can draw an inference he never would have had him come to Columbus if he didn't know what he was going to say, and he never said a word to the other side. Well, I'll stand up for Mr. Blizzard for a second, who's not here, if I may. I see my time is running up. I think that the main point that Mentor complained about at trial and in their initial brief here is the acceptance of the degradation opinion, and really what Dr. Porter did was not accept the degradation opinion. They're caught in a woodshed at the trial. Well, I think whether they're caught in a woodshed is sort of— Well, the judge saw the problem. He did, and he did the best that he could to try to fix it, and I think that under an abuse of discretion review, overnight continuance when the Mentor has all the evidence that it might need to rebut this testimony warrants an affirmance. I see my time is up unless there are any further questions, Your Honors. Ms. Ho, I feel strongly about these things, but don't take it for granted. Oh, never, Your Honor. Never, Your Honor. Let me make three points. If I were the district judge, I would have had Blizzard examined by me, if I were the district judge. I would ask him all those things I've just been talking about. Yes, Your Honor. But that didn't happen. First, Judge Kaplan, I wanted to reinforce my answer to your question about the record. If you look in our supplemental appendix in our motion that we filed, on page two of that motion we say, Mentor has been prejudiced. Dr. Porter's new and changed testimony, which Mentor learned for the first time in open court as Dr. Porter testified, deprived Mentor of the ability to depose Dr. Porter to discover these opinions or to challenge his data and methods, including the reliability of his opinions under Daubert. It also deprived Mentor of the ability to fully prepare for trial, including the reports and testimony of its own experts. So it's true it doesn't say the word rebuttal there, but it does. We do mention our prejudice in terms of including the reports and testimony of our own experts. And was that the motion you filed post-trial? No, this is the motion that we filed several days after the incident, arguing for mistrial-slash-exclusion, arguing that the overnight continuance was not sufficient to address the prejudice. Is this after the close of the evidence or earlier? This is earlier. This is earlier. Still on the defense case? Pardon? Still on the defense case? It was filed when the defense was still presenting evidence. Yes, this was plaintiff's. I mean, this was plaintiff's. It was plaintiff's witness. Dr. Porter was plaintiff's witness. Of course it was. But you filed the motion during the defendant's case in chief, yes or no? This motion was filed several days after, which I believe was still during plaintiff's case, but I can confirm that. But the evidence was closed on February the 18th. What day was it? Let me confirm that. Yes, the evidence closed on plaintiff's case. On the 17th and had argument on the 18th. Ended on the 15th. And we made a motion for directed verdict at that time that referred to Porter, but the motion that I'm referring to was actually filed. Let me give you the exact date. It was filed February 14th of 2016. So it was before. Four days before. Yes, Your Honor. Yes. And this is before you presented your case in chief? That is correct. That is correct. The purpose of this motion was what? You wanted a mistrial? What did you do? Yes, we were reiterating our motion. We initially asked for a mistrial for exclusion. And then only in the alternative did mentors counsel say, if you're not going to grant, if you're not going to exclude, if you're not going to grant us, then at least give us time before cross. Again, that was only in the alternative. Our primary argument has always been that exclusion is wrong. Your motion didn't say give us time to cross. The witness was already gone, right? Your written motion didn't say give us time. No, that's correct. That's correct, that the testimony needed to be excluded. That's correct. It was only at the time. So you wanted the testimony struck. That's correct. That's always been our. If you couldn't get a mistrial. A judge said no mistrial and I'm not striking the testimony. That's correct. That's correct. That this is going to the jury. And, Judge Tovled, in response to your questions, I think, I hear your point about the balance here and the response to the prejudice. And I think that that's precisely why the First Circuit in Licciardi and the Eighth Circuit in Ten Barge reversed on the same abusive discretion standard that applies here, on a similarly egregious circumstance where you have an about face on a key issue at trial. Both the First and the Eighth Circuit reversed. The trial court abused its discretion. And I think Ten Barge is very insecure. What do these cases say about the proponent of the testimony not saying a word to the court or to the other side? That is precisely why Rule 37 was given teeth in the sanctions. And I think it's important that it's prejudice. The focus is on prejudice. But it's also on deterrence, that the point of the rule is not only to cure whatever prejudice or harmfulness may have caused, but it's also to deter future conduct. And we agree that if an egregious case like this, exclusion is not the remedy, then we do think the deterrent threat of the rule is all but eviscerated. And I see my time is up if there are no further questions. Thank you. The court will be in recess until 9 in the morning.